T. B. PERRY, Appellant, v. B. P. CASTNER, THE PEOPLE'S SAVINGS BANK, and the CITY OF ALBIA.

Streets: USE OF SIDEWALK: NUISANCE. A city has control over its streets and alleys, and may permit such use of the same in connection with a business enterprise as will not constitute a nuisance; but such permission will not protect an abutting property owner in constructing and maintaining a stairway, from the street to the basement of the building, in such a manner as to use the walk in front of an adjoining owner's place of business as a landing, to his injury.

*Appeal from Monroe District Court.*— HON. C. W. VERMILLION, Judge.

WEDNESDAY, JUNE 15, 1904.

THE plaintiff is owner of lot 5 and a strip eleven feet wide off the west side of lot 6, in block 11, in the First Survey of the city of Albia, having a north frontage on Washington street of forty-four feet. Thereon is a double two-story brick building covering the ground from the street back ninety feet. The first story is divided lengthwise into two rooms, each twenty-two feet in width, with large show windows in front, used by tenants for display of goods and wares to attract customers and draw trade. The defendant Castner was, and the People's Savings Bank is now, the owner of the remaining twenty-two feet in width of lot 6, on which the former erected a two-story brick building, also running back from the street ninety feet, the lower story of which is occupied as a banking house. Washington street, with three others, forms the boundary of the public square, four hundred and twelve and one-half feet square, in the center of which is

located the courthouse of the county, and the outer line of these streets is the frontal line of business houses surrounding it. Immediately in front of these buildings is a sidewalk twelve feet in width to the curbstone, the remaining space being paved for public travel. During the past summer the defendants made an excavation three feet wide and eight or nine feet deep along the entire width of their building for a down stairway to the basement underneath. This open space is walled up, and is immediately north of the lot line, and in the ground set apart for the sidewalk. All of it is covered, save about twelve feet to the west. An iron railing about three feet high has been placed along the east and north side of the part uncovered to within twenty-three inches of the line of the walk in front of plaintiff's building, and defendant's stairway opening extends to within ten inches of such line.

The plaintiff alleged that this open space, with the railing and stairway, is a private as well as public nuisance; that the sidewalk is in the most publicly traveled portion of the city; that it is often crowded with pedestrians; that property about the square commands a high rental because of the location; that the down stairway, open space, and railing tend to shut out the view of plaintiff's premises which was formerly enjoyed by reason of the width of the sidewalk; that defendants now of necessity make petitioner's walk a landing for their stairway; that the passage of persons down and up the stairway over plaintiff's sidewalk, located at the landing, interferes with the free and uninterrupted use thereof by plaintiff and his tenants; that the view and prospect of plaintiff's premises is thereby obstructed, and their value is lessened, by said stairway opening and railing; that the defendants have appropriated part of the public street to their private use; and plaintiff prayed that they be restrained from using said stairway and be commanded to close the opening, and restore the sidewalk to the condition it was before removal. The defendants answered (1) by a general

denial; (2) by averring that before the construction of their building Castner petitioned the mayor and city council of Albia for permission to construct the stairway, and that such permission was unanimously granted, in pursuance of which the building with the stairway as alleged was erected; (3) by alleging that plaintiff had recently constructed, and now maintains, a stairway abutting on the sidewalk of the public square similar to that complained of, and more dangerous and unsightly, and is thereby estopped from maintaining this action; and (4) that the stairway is absolutely essential to the use and enjoyment of defendants' property, and constructed according to the custom prevailing in Albia. Thereupon the plaintiff replied (1) by admitting the application to the mayor and city council as alleged, but averring the consent was not by ordinance; (2) denied the authority of the city council to permit the appropriation of any portion of the sidewalk to private use, and alleged that whatever action or authority the city council might have assumed to give was illegal, and conferred no rights on defendants; (3) admitted that he had constructed, and now maintains, a down stairway, but that it is not upon a public sidewalk of a street, and is entirely disconnected from anything involved in this action. The defendants demurred to the first two counts of the reply on the ground that the city had full authority to grant permission for the construction of the open stairway and railing as alleged, and to the third count for that plaintiff appeared to be enjoying privileges he was seeking to deny others. The demurrer to the third count was overruled, and that to the first two counts of the reply was sustained. As plaintiff elected to stand on the ruling, his petition was dismissed, and he appeals.—*Reversed.*

*T. B. Perry, pro se.*

LADD, J.— For the purposes of the ruling on the demurrer the allegations of the pleadings in so far as they assert

the excavation of the opening in the street, the construction of the down stairway, and the railing about it, and that these occasioned injury to plaintiff distinct from that to the general public, must be accepted as true. Possibly some difficulty may be experienced in the proof, but with that we have no concern at this time. The sole question, then, is whether, conceding the facts to be as stated, the permission granted by the city council affords any defense. It may be safely laid down as a general rule that " public highways belong from side to side and from end to end to the public," and " the public are entitled, not only to the free passage along the highway, but to a free passage along all of it not in actual use of some other traveler." This necessarily includes not only the portion made use of by wagons, carriages, and the like, but the sidewalks as well. *State v. Berdetta,* 73 Ind., 185 (38 Am. Rep. 117); *Scopp v. St. Louis,* 117 Mo. 131 (22 S. W. Rep. 898, 20 L. R. A. 783). The consensus of judicial opinion is to the effect that any permanent encroachment on a public street which interferes or impedes its free use for travel constitutes a nuisance. *Savage v. City of Salem,* 23 Or. 381 (31 Pac. Rep. 832, 24 L. R. A. 787, 37 Am. St. Rep. 688). The temporary use of streets for the deposit of building material, the conveyance of goods by tradesmen, and in other ways, need only be adverted to. The necessity of such encroachments is sufficient for their justification. See note to *Callanan v. Gilman,* 1 Am. St. Rep. 831; *Raymond v. Keseberg,* 84 Wis. 302 (54 N. W. Rep. 612, 22 L. R. A. 783). Even these are not to be unreasonably prolonged. But obstructions which are permanent, and interfere with the free and unimpeded use of the street, although enough space may be left for the passage of travelers, are nuisances, which may be abated. Thus a show case in front of a store, a bay window sixteen feet above the sidewalk, and projecting over it three and one-half feet, a fruit stand encroaching on the sidewalk, a show board extending eleven and one-half inches over the sidewalk in front of a shop, a log in

the street at the threshold of a gate, scales for private use in the street, have all been declared nuisances.   See above note; *Reimer's Appeal,* 100 Pa. 182 (49 Am. Rep. 373) ; *Costello v. State,* 108 Ala. 45 (18 South. Rep. 820, 35 L. R. A. 303) ; *Barling v. West,* 29 Wis. 307 (9 Am. Rep. 576) ; *Emerson v. Babcock,* 66 Iowa, 257.

The court, in *State v. Kean,* 69 N. H. 122 (45 Atl. Rep. 256, 48 L. R. A. 102) in declaring a bay window eight feet above the sidewalk an obstruction, said:   " The public, however, is entitled to the full and free use of the territory within the limits of a highway, not only for actual passage, but for all purposes that are legitimately incident thereto.   Every actual encroachment upon the highway by the erection of a building or fence thereon, or any other permanent or habitual occupation thereof, is an invasion of the public right, even though it does not operate as a natural obstruction to public travel."   See, generally, as to things overhanging streets, note to *Hagerstown v. Witmer,* 39 L. R. A. 667 (86 Md. 293, 37 Atl. Rep. 965).   The people are entitled to make use of all parts of the street.   *Goodrich v. Railway,* 103 Iowa, 412.   In a recent Indiana case the court declared that " the permanent and exclusive use and occupancy of any public street or highway by any person by the erection or maintenance of any structure thereon, beneath or above its surface, which wrongfully obstructs such street or highway, is a public nuisance, punishable as a misdemeanor."   *Bybee v. State,* 94 Ind. 443 (48 Am. Rep. 175).   These general principles are too well established to call for an extended citation of the authority.   The main difficulty arises in determining whether a cellar or area way is an obstruction, and, if so, whether their construction may be permitted by municipal authority.   In this State the title to the streets is in the city, and by section 751 of the Code power is conferred upon it " to establish, lay off, open, widen, straighten, narrow, vacate, extend, improve and repair, streets, highways," etc., and by section 753 it is given " the care, supervision, and control of all public high-

ways, streets, avenues, alleys, public squares and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances." But for the custom of making use of part of the streets as areas for light and to furnish access to basements since the organization of the State, we should experience difficulty in the interpretation of these statutes. For more than fifty years cities and towns have assumed that the power to care for, supervise and control the streets, including the right to permit their reasonable use by abutting owners in obtaining access to all parts of their property, and such authority has been recognized by this court. In *Davis v. City of Clinton,* 50 Iowa, 585, it was held that an area could not be constructed under the sidewalk without complying with conditions imposed by the city. In *Emerson v. Babcock,* 66 Iowa, 237, though scales had been located by permission of the town, as this was but a license, the court held it might order their removal. In *Day v. City of Mt. Pleasant,* 70 Iowa, 193, the court remarked that: "We know of no rule of law which forbids the construction of ways in the sidewalk to cellars under the adjacent buildings." In *Keyes v. City of Cedar Falls,* 107 Iowa, 509, is found this language: "Areas for light and basement windows and descents are necessary in order to carry on business in a city, and, if such excavations are properly guarded or covered after completion, they do not in themselves constitute a nuisance." In view of these expressions, the interpretation put on the statute for many years, and the universal use of the streets close to buildings for areas and cellar stairways, we are not ready to say that the power to permit them is not included in the sections of the Code quoted. Indeed, the necessities of modern life demand the location of many obstacles in the highway which in the olden time would not have been tolerated even in the king, who, according to Blackstone, might not license purprestures. Such are the poles used in the operation of telephone, telegraph, and street railway systems; the curbstone, parking, and the like. In the congested

portions of large cities the use of basements are of great value, and the construction of area ways seems to be a necessity. In *Gustafson v. Hamm,* 56 Minn. 344 (57 N. W. Rep. 1054, 22 L. R. A. 565) the court, in holding a private street railway might not be allowed to cross a street, distinctly recognized "the right of an abutting owner, under certain municipal regulations, to use a part of the street for areas for the purpose of access to basements for the temporary storage of building material, for laying underground pipes for connecting water and gas mains. * * * These are all included in the general right to use a street for purposes of access to the abutting premises, and have been long sanctioned as legitimate street uses." In *Jorgensen v. Squires,* 144 N. Y. 280 (39 N. E. Rep. 373), the cellar way projected into the sidewalk a distance of five feet from the building, and the court held permission by the city to be implied from long usage, and declared that the city, under its ancient charters and the consolidation act of 1882, had the power to grant such permission. *Donnelly v. City of Rochester,* 166 N. Y. 315 (59 N. E. Rep. 989). See *contra,* Elliott on Roads, sections 653, 691; *Smith v. McDowell,* 148 Ill. 51 (35 N. E. Rep. 141, 22 L. R. A. 393).

But it does not follow that the municipality may authorize the location or construction of an area way so as to work an injury to the property of an adjoining owner. While the council is to exercise control over the streets, this is coupled with the restriction that in doing so it " shall cause the same to be kept open and in repair and free from nuisances." This does not mean that nothing shall be allowed in the street, but that the street shall be kept free from obstacles which impede public travel. In exercising control over the streets, however, the council ought not to be allowed to encroach on private rights. The abutting owner has an interest in the street peculiar to his situation, and distinct from any he may claim as a citizen of the municipality. *Long v. Wilson,* 119 Iowa, 267. He is not only entitled to freedom of

ingress and egress, but to all the advantages of a street maintained as the law directs.   This includes the view incident to an unobstructed street.   No one would claim for the city the right to shut this off by suspending a placard in front of a building, even though it did not interfere with travel.   On this ground the erection of bay windows projecting in the street so as to cut off the adjoining owner's view, even though authorized by the city, has been enjoined.   *John Ainsfield v. Edward B. Grossman Co.,* 98 Ill. App. 180.   The method adopted in obstructing the view is not material.   See *Snyder v. Ry. Co.,* 105 Iowa, 284.   The street is not kept open as exacted by law when this is done.   In the instant case the petition alleges that the upper step of the stairway is within ten inches and the railing within twenty-three inches of the lot line.   This, of necessity, makes of the walk in front of plaintiff's premises a landing place for those going to and from the defendant's basement.   In other words, the defendant is not content with appropriating a portion of the street in front of its own lot in order to obtain access to its basement, but insists upon the right to a part of that in front of the plaintiff's building.   The use of such walk as a landing place may at times as effectually cut off the view from his window as the construction of a bay window or other projection near it, or the erection of a telephone pole in front of it.   Possibly, as to people coming from and returning toward the direction of plaintiff's store building, there may not be just cause of complaint; but even then this travel would likely draw closer to his show window.   Those coming from the opposite direction would necessarily come to the walk in front of his window in turning to go down or upon coming up to go away, and thereby obstruct the view from within and of travelers along the street from without. While we are inclined, because of long usage, to uphold the reasonable use of a street in front of a lot for area ways and for access to the basements, when this will not impede travel, we are not ready to say that, even by consent of the city, the

owner of a lot may, in addition thereto, also appropriate for such purposes a portion of the street in front of his neighbor's property, to the injury of the latter. Whether injury results in a particular case, and to what extent, necessarily depends somewhat upon the amount of travel on the street, and especially up and down the cellar way. For the purposes of this case it is enough that such injury is alleged. It should be added that the permission of the city was merely to construct the area way without reference to the manner of construction.

We conclude that the demurrer should have been overruled.— REVERSED.