THE DES MOINES INDEPENDENT SCHOOL DISTRICT OF SALT CREEK TOWNSHIP, Appellant, v. J. MOSE McCLURE, Appellee.

**ESTOPPEL:**  Sovereign State—Application of Doctrine Against— Facts Not Justifying—Grantee of State.  Whether the doctrine of equitable estoppel, under any state of facts, may be applied against the sovereign state, *quaere.*  Concededly, the statute of limitations does not run against the state.  Evidence reviewed and *held,* neither the state nor its grantee was estopped to assert title against a public school corporation.

PRINCIPLE APPLIED:  In 1881, a public school corporation received a quit-claim deed to a certain acre of land and, in *sole* reliance on the validity of the deed, built a schoolhouse and other improvements on the land, and for over thirty years used the same for school purposes without objection.  In September, 1912, it was first learned that this deed was by an entire stranger to the title.  The title to the entire, forty-acre tract of which the one acre was a part was in truth in the state of Iowa from 1856 to September, 1912, on which latter date the state conveyed to the defendant in instant case.  The defendant had lived for many years in the neighborhood and long before his purchase had full knowledge of the schoolhouse in question.  For a portion of the time after the school corporation took its deed, public taxes were collected on the entire forty acres, later on only thirty-nine acres. One citizen of the county became secretary of state and another became auditor of state and later governor, all prior to September, 1912, and they, at all times, had full knowledge of the location of this schoolhouse.  What knowledge was possessed by them of the condition of the title to the land in question during their terms as state officers was not shown.  At no time did the school corporation act or rely on any silence on the part of the state or its officers.  *Held,* the state was not estopped to insist on its title to the entire forty acres and that its grantee had the same right as the state.

*Appeal from Davis District Court.*—HON. FRANK W. EICHEL- BERGER, Judge.

Monday, May 10, 1915.

Action in equity to enjoin defendant from interfering with plaintiff's possession and use of one acre of land, and to establish plaintiff's title and rights thereto. By cross-petition, defendant claimed to be the owner of the land and asked that his title be quieted. There was a decree for defendant. Plaintiff appeals.—*Affirmed.*

*C. W. Ramseyer,* for appellant.

*W. D. Davis, C. A. Robbins* and *Henry E. Sampson,* for appellee.

Preston, J.—The petition alleges that plaintiff is a school corporation and as such it has owned for over thirty years the grounds located as follows: One acre square out of the south-east corner of the N. E. 1/4 of S. E. 1/4 of Sec. 10, Tp. 70, R. 12, in Davis County, Iowa, and during all said time has maintained thereon a schoolhouse for the purpose of conducting a public school, and has erected and maintained other outbuildings, and has dug and maintained a well on said premises; that during all said time said Independent School District has, during each year, maintained a public school in said building, at public expense, and is now preparing to open the spring term of school; that on July 21, 1881, said premises were conveyed to plaintiff by deed duly recorded, and that plaintiff has been in possession and control of said premises from the date of the deed to the present time; that in March, 1913, defendant took possession of the premises and built a barbed wire fence in front and refused to permit the plaintiff to use the property for school purposes; that there are between twenty-five and thirty children of school age within the district who will be deprived of school privileges unless defendant is enjoined. Plaintiff asks an injunction, and that its rights and title to the one acre be established.

1. Estoppel: sovereign state: application of doctrine against: facts not justifying: grantee of state.

For answer, and by way of cross-petition, the defendant says that he denies that plaintiff ever owned the real estate in question; avers that he had served written notice on plaintiff to vacate the premises and demanded possession thereof; that the person conveying the real estate to plaintiff had no right, title or interest therein at the time of making said conveyance, or at any other time; that the one acre in question, with other lands, was by the government of the United States granted to the state of Iowa by acts of Congress approved in 1845 and 1852; that ever since said date the state of Iowa was the owner of said lands until on or about the 3rd of September, 1912, when the same was conveyed by the state of Iowa to this defendant by a patent; that no conveyance of said land of any kind, save and except the said patent to said defendant, was ever executed by the state of Iowa; that the patent aforesaid was recorded in Davis county, September 9, 1912. Defendant, therefore, alleges that he is the absolute and unqualified owner of the entire forty-acre tract, including the one acre in question, and that plaintiff has no right, title or interest therein or to any part thereof.

For reply, plaintiff denies that the state of Iowa was the owner of said land on September 3, 1912, or at any other time within the last thirty or forty years; alleges that plaintiff has been in open, notorious and hostile possession of the one acre described, under color of title and claim of right, for a period of more than thirty years against defendant and his prior grantors, and that defendant is now barred by the statute of limitations to claim any right to said land; that plaintiff has made valuable improvements thereon, has built a schoolhouse, outbuildings, wells, and other improvements, at public expense; that said improvements were made with the knowledge of defendant and his prior grantors during said period, and that because thereof defendant is barred and estopped from claiming any right or title thereto; denies that its occupation of the land has been wrongful.

Plaintiff filed three lengthy amendments to the reply,

pleading the several matters in different ways as constituting an estoppel against the state and its grantee, the defendant. In these amendments, it is· alleged, substantially, that before plaintiff acquired the acre of ground on which its schoolhouse is now located, it for many years prior to that time owned another acre of ground on said forty-acre tract and maintained and conducted a public school thereon; that during all the time it so conducted and maintained a school, both before and after it acquired the acre of ground in controversy, it was an independent school corporation, and conducted under the laws of the state of Iowa as an independent school district, and received each year its portion of the state school fund to maintain and conduct said school as a public school. Plaintiff further states that, if the court should find that the legal title to said land was in the state up to and prior to September 3, 1912, the state and Davis County and the defendant, Mc-Clure, who claims to have received title to the same, are now each of them estopped from claiming title against the school district; that it conducted such school without objection from any public authorities; that, because of the facts alleged, the defendant and his prior grantors have waived all right and claim to said one-acre tract, and have waived all right and claim to object to plaintiff's use of said tract of land for school purposes; that they have been guilty of laches and are now barred and estopped from claiming any right in and to the one acre; that defendant, McClure, had knowledge of plaintiff's use of said property before he purchased the same and knew of the improvements thereon.

It is further stated that if the court should find that at the time of the issuance of the patent by the state to defendant the title was in the state, then the court should find that at the time plaintiff was the equitable owner of said premises, and that defendant purchased the same subject to plaintiff's right to use the property for school purposes; that even though the court should find the defendant to be the legal owner of the land, yet because of the facts alleged, the plain-

tiff should not be ousted from the premises, but defendant should be decreed to be the holder of the legal title to the ground for the benefit of and in trust for plaintiff. Plaintiff says that during all the time it occupied said premises it had no knowledge or information that the state claimed any right or title to the one acre of ground until the notices were served upon it by defendant, and that, because of said knowledge, defendant's acts constitute fraud against plaintiff, and because thereof defendant is not entitled to retain title to said ground as against the plaintiff; that for more than ten years prior to plaintiff's deed, the state, through its taxing officers, levied and collected taxes on the forty acres, which includes the one-acre tract, for the purpose of raising revenue to defray the expenses of both the state and Davis County, and that since said deed the state, through its taxing officials, has excepted the one acre in controversy in levying taxes on the forty-acre tract; that plaintiff has been an occupant and settler on the one acre of ground described.

Many of the facts are not disputed. It was conceded that the deed records in the recorder's office of Davis County show a certificate which was filed for record March 17, 1905, and the record was offered in evidence. This certificate is, in substance, as follows: The secretary of the state of Iowa certifies that under the act of Congress approved March 3, 1845, there were granted to the state of Iowa, ''All salt springs within the state not exceeding twelve in number, with six sections of land adjoining or as contiguous as may be to each,'' and there were approved in all to the state of Iowa by the secretary of the interior a certain number of acres, and that said approved lands were certified to the state of Iowa in 1856 by the acting commissioner of the land office of the United States under the act of Congress approved August 3, 1854. He also certifies that the state of Iowa, by the provision of Chapter 105 of the Acts of the Eighth General Assembly, also known as Secs. 1956, 1957 and 1958 of the Revision of 1860, approved the saline lands and funds to the

state university to become a part of the permanent fund of said institution, and that an exhibit attached to said certificate shows the section of land in which is located the one acre in controversy thus set apart to the University fund.

The patent issued to defendant by the state, dated September 3, 1912, and duly recorded at about that time in Davis county, is in part as follows: Whereas, J. Mose McClure, of Davis County, Iowa, has deposited in the office of the Secretary of State, of the State of Iowa, certificate of the Treasurer of the State University of Iowa whereby it appears that full payment has been made by the said J. Mose McClure according to the provisions of the Acts of the General Assembly approved January 22, 1853, entitled "An Act to Dispose of the Saline Lands," for the N. E. quarter of the S. E. quarter of Section 10, Township 70, North of Range 12 West of the 5th P. M., containing forty acres according to the official plat of the survey of the said land returned to the General Land Office of the United States by the Surveyor General, which said tract has been purchased by the said J. Mose McClure; now, know ye, that the State of Iowa, in consideration of the premises, and in conformity with the several acts of the General Assembly, have given and granted, and by these presents do give and grant, unto the said J. Mose McClure, and to his heirs and assigns, the said tract of land above described; to have and to hold the same together with all the rights, privileges, immunities and appurtenances of whatsoever nature thereunto belonging, excepting all buildings and improvements on said land, unto the said J. Mose McClure and to his heirs and assigns forever. This patent is executed by the proper officers of the state.

The deed to plaintiff before referred to from Edwin Manning and wife to the one acre in question recites:

"For and in consideration of an abandonment of the present schoolhouse site on the N. E. quarter of S. E. quarter of Sec. 10-70-12 by the grantee herein, and its reversion to

the grantor herein, and for the purpose of changing the school-house site of the grantee herein, we do hereby sell and quit claim to the Des Moines Independent School District of Salt Creek Township all our right, title and interest in and to the following described real estate:'' (Describing the one acre in question.)

This deed is dated July 21, 1881, and is duly acknowledged and recorded March 26, 1884. It appears by concession and upon the evidence that shortly after the deed just referred to, and in 1881, there were $500.00 in bonds voted to construct a schoolhouse in said district, and that the money so raised was expended in the construction of the schoolhouse as now located on the one acre of ground in question. Witnesses for plaintiff, who were members of the board of directors of plaintiff district, testified in substance that they believed the deed to be valid, and that they built the schoolhouse and made the improvements relying upon the deed.

By agreement, an abstract of title was offered in evidence in place of the records. The first of the entries on this abstract is No. 3, by which S. T. Caldwell and wife convey to Edwin Manning, by quit claim deed, the N. E. of the S. E. of 10. This deed is dated May 18, 1865. Item 1 on said abstract shows a grant from the United States to the State of Iowa of Section 10, selected as saline land, but does not show any conveyance from the state to anyone until the patent to defendant in this case which has been before referred to, and no evidence was introduced of any kind showing such a conveyance, so that the conveyance by Caldwell and wife to Manning was by a stranger to the title.

It is conceded that the acre in controversy had been occupied for school purposes since 1881. It is conceded by the defendant that Captain J. A. T. Hull was a resident of Davis County, Iowa, during the 70's, and from 1879 to 1885 he was secretary of state, and that during his incumbency of that office, and prior thereto, he knew of the existence of the

schoolhouse in controversy at its present location, and that
prior to 1881 the log schoolhouse was located on the same
forty, but not on the acre in controversy.

A further concession was that B. F. Carroll was born
in Salt Creek Township, Davis County, and taught school in
the schoolhouse in controversy some time in the 80's, and that
in 1902 he was elected auditor of the state of Iowa, and was
acquainted with the schoolhouse and its location prior to his
election, and during his six years' incumbency in office as
auditor and four years as governor of the state, to January,
1913, he knew of the existence of this schoolhouse and its
location ever since it was built, in 1881.

It was shown that the plaintiff had existed as a school
corporation since 1846, and that each year school was con-
ducted there by taxes raised on the property in the district
and from apportionment each year from the state school fund,
and that during each of said years to the present time there
have been school children of school age to attend and who did
attend said school. From 1865 to 1884, the forty acres were
assessed to Edwin Manning, who paid the taxes; from 1885
to 1898, thirty-nine acres of said forty acres were assessed
to him.   There is evidence of the directors and others that
they never heard that the acre in controversy was ever claimed
by the state, and that defendant lived in the neighborhood
for years and knew of the schoolhouse and that school was
being carried on in the building on the acre in question, and
that he knew the circumstances of the building of the school-
house before he bought the land of the state.   The first school-
house was situated one-fourth of a mile north of the present
one, but on the same forty acres.

Defendant offered in evidence the different acts of Con-
gress, acts of the general assembly, reports of the land office
and other documents in regard to the saline land grant cov-
ering the land in question.

By its decree, the court found the ownership and occu-
pancy of the two school sites in accordance with the facts

before recited, and that the defendant is the owner of said one-acre tract in the southeast corner of said forty acres by patent, as recited in the evidence, and, further, that prior to September 3, 1912, the state was the owner of said tract of land, and that neither the defendant nor the state, his grantor, have by their acts, conduct or omissions become estopped from asserting their title in and to said acre as against the plaintiff, and that defendant is entitled to have his title quieted, and that plaintiff's petition should be dismissed.

Appellee cites *Park Commissioners v. Taylor*, 133 Iowa 453; *Carr v. Moore*, 119 Iowa 152, 159; *C. R. I. & P. R. R. Co. v. Council Bluffs*, 109 Iowa 425, and other cases, on the point that there can be no adverse possession, and that the statute of limitations does not run as against the state; and *Cedar Rapids v. Young*, 119 Iowa 552, holding that the levy and collection of taxes on property will not estop a city from asserting title to the property for the public.

It is said by appellant that the question as to whether estoppel ever operates against the state has never been before this court for determination. But they say that the doctrine of estoppel has been applied against the agencies of the state, such as counties and cities, as well as against persons, citing *Bullis v. Noble*, 36 Iowa 618; *Foster v. Bigelow*, 24 Iowa 379; *Schafer v. Wilson*, 113 Iowa 475; *Iowa R. R. Co. v. Fehring*, 126 Iowa 1; *Sioux City v. R. R. Co.* 129 Iowa 694; *Simplot v. Dubuque*, 49 Iowa 630; *Audubon Co. v. Am. Emigrant Co.*, 40 Iowa 460; *Adams Co. v. R. R. Co.*, 39 Iowa 507. They also claim that the doctrine of estoppel is applied against states in their dealings with individuals, citing *State v. Milk*, 11 Fed. 389; *U. S. v. Stinson*, 125 Fed. 907; *Simplot v. R. R. Co.*, 16 Fed. 350; *State v. School District*, 88 N. W. (Minn.) 751.

For appellee, it is contended that, in order to constitute an equitable estoppel, there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to

whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on and acted upon it to his prejudice; citing 16 Cyc. 726; Bigelow, Estoppel 569. That in cases of estoppel which affect the title to land, it has been laid down as a general proposition that the estoppel must possess an element of fraud; that in order to establish an equitable estoppel against one asserting his title to real property, the party attempting to raise it must show actual fraudulent representation or concealment, or such negligence as would amount to fraud in law, and that the party setting up such estoppel was actually misled thereby, to his injury; that fraud or bad faith is a necessary ingredient of estoppel based upon misrepresentation by passivity. *Dye v. Crary,* 9 L. R. A. (N. S.) 1136; 16 Cyc. 728-730.

It is also contended that when the foundation of the estoppel is silence and omission to give notice of one's rights, the party relying upon the same must in fact have had means of ascertaining the true state of the title by reference to the public records. *Thor v. Oleson,* 125 Ill. 365. That a public record is an available means of information as to questions of title, and one who does not take advantage of it cannot claim an estoppel against one who merely fails to furnish such information. *Jones v. Brandt,* 59 Iowa 332; *Bradley v. Gelkinson,* 57 Iowa 300. Estoppel by misrepresentation is a form of estoppel. 16 Cyc. 671, 722. As stated in 2 Pomeroy's Equity Jurisprudence (3rd Ed.) Sec. 803:

"There is a theory which makes the essence of equitable estoppel to consist of fraud. In accordance with this view, the language used by some courts in defining and describing the general doctrine has been so sweeping and positive that, taken literally, it does not admit the possibility of such an estoppel unless the party has been guilty of actual intentional fraud in law; and thus the whole doctrine is repre-

sented as virtually a mere instance of legal fraud. This theory is not sustained by principle, and it cannot be made universal. . . . It is accurate, therefore, to describe equitable estoppel, in general terms, as such conduct by a party that it would be fraudulent, or a fraud upon the rights of another, for him afterwards to repudiate and to set up claims inconsistent with it."

Appellee cites *Cedar Rapids Water Co. v. City of Cedar Rapids,* 117 Iowa 250, where the court quoted from Reese on Ultra Vires, to the effect that any person having no authority to act cannot, by his conduct, estop others not responsible for his conduct. Accordingly, no estoppel can ordinarily arise from the act of a municipal officer done in violation or without authority of law. Also, the following cases to the effect that the state and a party claiming under the state could not be estopped by unauthorized acts of city officials: *Cedar Rapids Water Co. v. Cedar Rapids, supra; McGillivray v. Barton,* 96 Iowa 629; *Taraldson v. Lime Springs,* 92 Iowa 187; *Solberg v. Decorah,* 41 Iowa 501; *Gill v. Appanoose Co.,* 68 Iowa 20.

The point is made by appellant that Captain Hull and Governor Carroll knew that a public school was being conducted in a schoolhouse situated upon the forty-acre tract under consideration, and that they afterwards became state officers. But there is nothing in the record to show that these men, while they were state officers, knew anything of the condition of the title of any part of the forty-acre tract. The appellant entered upon this property without the consent of the state or its officers, and the record does not show that while these two men were acting as state officers they knew appellant claimed any interest in the one acre of ground under consideration.

We do not understand appellant to now claim that the statute of limitations will run against the state. In fact, a number of matters pleaded by appellant in its reply are

not argued or now relied upon. It is said for appellant in argument that the only question in the case is, whether an estoppel may in any case operate against the state, and whether, under the facts of this case, there is an estoppel. Without now determining whether, in any case or under any state of facts, there may not be an estoppel against the state, we are of opinion that, under the evidence in this case, the showing is not sufficient to work an estoppel, even though the doctrine can be applied to the state. The plaintiff merely occupied a part of this forty acres conveyed by the state to the defendant. The land used as the first site was without any right, and the second was under a deed from a person having no title. The title was all the time in the state, under a grant from the Federal Government, until it issued a patent to the defendant in 1912. The state, according to plaintiff's own theory, merely remained passive. No fraud or misleading statement is shown by the state or its officers. There is nothing in the record to show that the state or its officers intended or expected its conduct to be acted upon by plaintiff or the public generally, nor is there anything to show that the silence of the state was relied and acted upon by plaintiff to plaintiff's prejudice. The evidence shows that the improvements were made on the one acre in controversy in 1881, soon after the deed to it from Manning, and that it relied on the deed. It certainly cannot be now claimed by appellant that the after silence of the state induced the building of the schoolhouse, or that appellant relied upon such silence or in any manner changed its position by reason of the passivity of the state. Plaintiff simply occupied the land and made the improvements thereon without right as against the state. At no time was the state, nor were its officers, placed in a position by which it was required to speak or assert its claim. Under such circumstances, appellant acquired no right or title as against the state or the defendant, its grantee, and the mere silence of the state and its officers would not constitute a fraud on its part, nor would it be a fraud upon the appellant

for the state or its grantee to now assert its rights to the entire forty acres conveyed by the. state to the defendant. It is said by appellant that the defendant, McClure, knew the schoolhouse was located on the present site before he ob-' tained his patent from the state, and that the possession by appellant was notice to defendant of the appellant's rights. But we have shown that appellant had no rights as against the defendant or his grantor, the state. Possibly the deed from Manning to the school district in 1881 would be color of title as between individuals, and a basis for adverse possession, but we. have already stated that appellant does not rely upon adverse possession.

We conclude that the decree of the district court was right, and it is, therefore,—*Affirmed.*

DEEMER, C. J., EVANS, LADD and WEAVER, JJ., concur.